# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

BRUCE G. SCHWARTZ,

       Plaintiff,


v.                                    **MEMORANDUM OF LAW & ORDER**
                                      Civil File No. 17-3329 (MJD/TNL)


ARDIS BOGEN f/k/a
Ardis Schwartz,

       Defendant.

Michael D. Schwartz and Brandon M. Schwartz, Schwartz Law Firm, Counsel for Plaintiff.

Timothy A. Sullivan and Rebecca A. Chaffee, Best & Flanagan LLP, Counsel for Defendant.

## I.    INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss. [Docket No. 8] The Court heard oral argument on November 16, 2017. Because this action is barred by res judicata, the Court grants the motion to dismiss.

## II.    BACKGROUND

### A.    Factual Background

1

### 1.    The Parties' Marriage and Divorce

In 1952, Plaintiff Bruce G. Schwartz married Defendant Ardis Bogen. (Compl. ¶ 15.)  In 1953, Schwartz began working for Northwestern Bell Telephone Company.  (Id. ¶ 2.)  Eventually, he became the Chief Operating Officer for Pacific Bell and, then, he became an officer of AT&T.  (Id. ¶¶ 3-4.)

Schwartz is a participant or beneficiary under the AT&T Basic Bell System Management Pension Plan ("Pension Plan").  (Compl. ¶ 5.)  The Pension Plan is subject to ERISA, which became effective in 1974.  (Compl. ¶ 6.)  The Pension Plan provides: "Assignment or alienation of pensions under this plan will not be permitted or recognized unless or otherwise required under applicable law." (Compl. ¶ 14.)

On May 5, 1981, Schwartz and Bogen entered into a Marital Property Settlement Agreement ("MPSA") in the State of New Jersey, under which both waived and released all rights to equitable distribution under New Jersey law. (Compl. ¶ 16; Schwartz Aff. ¶11; Schwartz Aff., Ex. 2, MPSA ¶ 34(v).)  Under the MPSA, Schwartz would pay Bogen alimony on the first day of every month "until the Husband shall retire from American Telephone & Telegraph Company, its affiliates or subsidiaries."  (MPSA ¶ 3.)

> Upon the Husband's retirement from American Telephone & Telegraph Company, or its affiliates or subsidiaries, the amount payable as alimony and support of the Wife as set forth in paragraph 3 shall cease. In lieu thereof, the Husband shall pay to the Wife, as and for her alimony and support, a sum equal to fifty (50%) of the Husband's basic Bell System Management Pension Plan, at the date of retirement. Said payment shall be made by Husband by check or money order at the residence of the Wife or at any place she may designate, in writing to the Husband. Said payment shall be payable in monthly installments on the first day of each month.

(MPSA ¶ 4.)

The MPSA further provides: "The Husband's obligation to pay alimony and support to the Wife shall cease upon her death, the death of the Husband, or upon the Wife's remarriage, whichever event is earlier." (Id. ¶ 5.)

In 1983, Schwartz and Bogen were divorced in the State of New Jersey. (Compl. ¶ 17; Sullivan Aff., Ex. 2, Final Judgment of Divorce.) The Final Judgment of Divorce was entered on July 1, 1983, and incorporated the MPSA, as modified in the Final Judgment of Divorce. (Final Judgment of Divorce at 2.) The modification of the MPSA stated, in relevant part:

> (A) In the event Wife remarried, the obligations of Husband to pay Fifty (50%) percent of the Husband's Basic Bell System Management Pension Plan shall terminate.
>
> * * *

3

(C) In the event Wife marries after January 1, 1986, but on or before December 31, 1990, Husband shall pay Wife as equitable distribution, a yearly sum equal to twenty (20%) percent of Husband's Basic Bell System Management Pension Plan, computed at the value of said Basic Pension Plan on January 1, 1986.

* * *

(E) In the event Wife married after December 31, 1995, she shall not be entitled to any portion of Husband's Basic Bell System Management Pension Plan.

(F) The Husband's obligation under paragraphs A through D, inclusive, shall terminate upon his death or the death of Wife. . . . .

(Final Judgment of Divorce at 3.)

In 1985, Schwartz retired from AT&T. (Compl. ¶ 18.) Neither Schwartz nor Bogen made a request for a qualified domestic relations order ("QDRO") in 1985. (Id.)

In 1989, Bogen remarried. (Compl. ¶ 19.) Neither Schwartz nor Bogen made a request for a QDRO in 1989. (Id.) After Bogen's remarriage, she filed tax returns declaring the payments from Schwartz as alimony. (Id. ¶ 23.)

From 1989 through March 2016, Schwartz made payments to Bogen. (Compl. ¶¶ 20-21.) Both Schwartz and Bogen reported the payments as alimony on their federal tax returns. (Id. ¶¶ 22-23.) The payments were sent to Bogen in Minnesota. (Schwartz Aff. ¶ 19.)

In March 2016, Schwartz contacted Bogen and told her that he realized that under the terms of the MPSA and the Final Judgment of Divorce he should have stopped making the alimony and support payments in 1995 because she had remarried.  (Compl. ¶ 24; Schwartz Aff. ¶ 23; Schwartz Aff., Ex. 6.)  On August 3, 2016, Bogen, through her attorney, retorted that the alimony payments were not alimony but rather, were an equitable distribution of the Pension Plan.  (Compl. ¶ 24; Schwartz Aff., Ex. 7.)  In an August 25, 2016 letter, Bogen opined that, because the decree and modification of property settlements between Schwartz and Bogen were negotiated and entered before the Retirement Equity Act of 1984, "the division of the pension was done without a QDRO."  (Id.)

### 2.    New Jersey Action

On October 11, 2016, Bogen, through counsel, filed a Motion for Enforcement of Litigant's Rights in the Superior Court of New Jersey, Chancery Division, Family Part, requesting that Schwartz be compelled to pay 20% of his Pension Plan in monthly payments of $1,426.32 per month.  (Compl. ¶ 31; Sullivan Aff., Ex. 4.)  Schwartz, through counsel, argued that the anti-alienation provisions of ERISA prevented Bogen from sharing his pension and entitled him to a refund of money already paid.  (Sullivan Aff., Ex. 5.)  He explicitly argued

that there was no QDRO to divide his pension, and, without a QDRO, the

Pension Plan could not be divided.  (Id.)  He also asserted that ERISA preempted

state law with respect to the pension.  (Id.)

On January 27, 2017, the New Jersey court ruled that laches barred

Schwartz's request for a refund of the money paid to Bogen since 1995.  (Sullivan

Aff., Ex. 3, New Jersey Order at 8.)  The court further held that the pension plan

payments were an equitable distribution, not alimony.  (Id. at 11.)

The court also held:

> And Plaintiff's argument that he was awarded the entirety of
> the pension plan pursuant to Paragraph 8 of the PSA is unsupported
> by the schedule attached to the PSA.  Schedule B reveals that
> securities, investment properties, and partnership interests were
> included in it, but there was no mention of a pension plan.  And
> even if the pension plan was listed on the Schedule B, by entering
> the subsequent MPSA Plaintiff agreed to pay Defendant a portion of
> his pension as equitable distribution, superseding anything to the
> contrary in the original PSA.
>
> As to Plaintiff's ERISA argument, Section 206(d)(1) of ERISA
> states that '[e]ach pension plan shall provide the benefits provided
> under the plan may not be assigned or alienated.' And Plaintiff's
> pension plan does in fact prohibit assignment or alienation of
> pensions or other benefits of his plan.  However, pursuant to Biles v.
> Biles, 163 N.J. Super. 49, (Ch. Div. 1978), this restriction was not
> intended to prevent the assignment to a spouse or former spouse
> that is entitled to support.  Indeed,

> Balancing the interest of a recipient of pension benefits in keeping those benefits entirely to himself against the interest of a former spouse in enforcing an order of support leads to the conclusion that the objective of ERISA is not frustrated by state laws enforcing support obligations.

> Id. at 56.[1]  Therefore, Plaintiff is not prohibited from assigning any benefit he may receive to Defendant to satisfy his equitable distribution obligation against her.

> Lastly, at oral argument Defendant asserted that Paragraph 4(F) of the MPSA evidences that these payments were alimony and not equitable distribution because they terminate at the death of either party.  The Court rejects this argument because there is no bar on contracting for termination of equitable distribution on death.  See Connor v. Connor, 254 N.J. Super. 591 (App. Div. 1992) and Moore v. Moore, 114 N.J. 147 (1989) authorizing payment of equitable distribution in installments and in the case of Connor a termination upon death.

(New Jersey Order at 11-12.)

The New Jersey court awarded Bogen $15,689.52 in back pension-sharing payments, ordered Schwartz to continue paying $1,426.32 per month in pension-sharing payments going forward, and awarded Bogen attorneys' fees and costs. (New Jersey Order at 12, 14.)  Schwartz did not appeal the New Jersey court order.

---

[1] Even if the opposite were true our Supreme Court has expressly endorsed the device of a constructive trust to assure receipt by a party of his/her share of equitable distribution where the payer spouse possesses the asset.  See Thieme v. Aucoin-Thieme, A-51-15 (N.J. Dec. 12, 2016) (slip op. at 32-33).

### 3.    Parties' Current Domiciles

Schwartz now resides in Carbondale, Colorado.  (Compl. ¶ 1; Schwartz

Aff. ¶ 1.)

According to the Complaint, Bogen resides in Bloomington, Minnesota.

(Compl. ¶ 7.)  Schwartz avers that Bogen owns and lives in a home in

Bloomington, Minnesota that she purchased in July 2003.  (Schwartz Aff. ¶ 7;

Schwartz Aff., Ex. 1, 2017 Property Tax Statement.)   Schwartz avers that, at

Bogen's direction, he has sent the payments to that residence in Bloomington,

Minnesota, and Bogen has personally signed receipts for those payments

received in Minnesota at that residence.  (Schwartz Aff. ¶ 27.)  Bogen deposited

the payments from Schwartz in her bank in Minnesota, including payments

made in 2017.  (Schwartz Aff. ¶ 29.)

Bogen's attorney avers: "I have seen Ms. Bogen's driver's license which is

from the State of Arizona establishing her residency in that state."  (Sullivan Aff.

¶ 2.)

### B.    Procedural History

On July 26, 2017, Schwartz filed a Complaint against Bogen in this Court.

[Docket No. 1]  The Complaint asserts: Count 1: Recovery of Payments in

Violation of ERISA and REA; and Count 2: Declaration of Federal Preemption under ERISA and REA.

Bogen has now filed a motion to dismiss based on failure to state a claim, res judicata, collateral estoppel, laches, and abstention.  She also asserts improper venue.

## III.   DISCUSSION

### A.   Subject Matter Jurisdiction

This matter is in federal court based on a claim of federal question jurisdiction under ERISA.  The Court rejects Bogen's claim that the Court is without subject matter jurisdiction due to application of the domestic relations exception.

#### 1.   Standard for Rule 12(b)(1) Motion

"Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide."  Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990).  "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments."  Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citation omitted).  "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is

successful if the plaintiff fails to allege an element necessary for subject matter

jurisdiction."  Id.  In "a factual attack on the jurisdictional allegations of the

complaint, the court may receive competent evidence such as affidavits,

deposition testimony, and the like in order to determine the factual dispute."  Id.

### 2.    Domestic Relations Exception

"The domestic relations exception . . . divests the federal courts of

jurisdiction over any action for which the subject is a divorce, allowance of

alimony, or child support, including the distribution of marital property."

Wallace v. Wallace, 736 F.3d 764, 766 (8th Cir. 2013) (citations omitted).

> [A] federal suit is inextricably intertwined with a state domestic
> proceeding, thereby depriving the federal court of subject matter
> jurisdiction, where the requested federal remedy overlaps the
> remedy at issue in the state proceeding.  This occurs where the
> federal suit involves a remedy which is essentially domestic—
> where, in addressing the same conduct involved in a state domestic
> proceeding, the effect of a remedy in the federal suit is to modify,
> nullify, or predetermine the domestic ruling of the state proceeding.

Id. at 767 (citation omitted).

Subject matter jurisdiction exists in this case based on federal question

jurisdiction because this lawsuit is based on ERISA, a federal statute.  This is not

a diversity case; therefore, the domestic relations exception does not apply.  See,

e.g., United States v. Crawford, 115 F.3d 1397, 1401–02 (8th Cir. 1997) (holding

that the domestic relations "exception is irrelevant to federal prosecutions under the CSRA because the district courts' jurisdiction in such cases does not rest upon diversity, but rather is based upon 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.")); Rosenbrahn v. Daugaard, 61 F. Supp. 3d 862, 867 (D.S.D. 2015) ("But the domestic relations exception only applies to this court's diversity jurisdiction, not its federal question jurisdiction."), aff'd, 799 F.3d 918 (8th Cir. 2015); Grazzini-Rucki v. Knutson, No. 13-CV-2477 (SRN/JSM), 2014 WL 2462855, at *12 (D. Minn. May 29, 2014) ("The Court, however, concludes that the domestic relations exception does not apply because it is a limitation on diversity jurisdiction, and there is no diversity here.") aff'd (8th Cir. Mar. 31, 2015).

**B.    Venue**

In her opening memorandum, Bogen briefly argues that venue is improper because Schwartz is a citizen of Colorado and Bogen is a resident of Arizona. The Court concludes that venue is proper in this case.

11

### 1. Venue Standard

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

ERISA provides:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2). And "for purposes of § 1132(e)(2), a defendant 'may be found' in any federal district with which the defendant has sufficient 'minimum contacts' to permit a court of that <u>state</u> to exercise personal jurisdiction under <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945), and its progeny." <u>Schoemann ex rel. Schoemann v. Excellus Health Plan, Inc.</u>, 447 F. Supp. 2d 1000, 1003 (D. Minn. 2006).

"A two-step inquiry is employed when determining whether a federal court has jurisdiction over a non-resident party: (1) whether the facts presented satisfy the forum state's long-arm statute, and (2) whether the nonresident has 'minimum contacts' with the forum state, so that the court's exercise of

12

jurisdiction would be fair and in accordance with due process." <u>Soo Line</u>

<u>Railroad Co. v. Hawker Siddeley Canada, Inc.</u>, 950 F.2d 526, 528 (8th Cir. 1991)

(citation omitted). "The Minnesota long-arm statute extends jurisdiction to the

fullest extent permitted by the due process clause." <u>Id.</u>

> The due process clause requires there be minimum contacts between the defendant and the forum state before the forum state may exercise jurisdiction over the defendant. Sufficient contacts exist when the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice. In assessing the defendant's reasonable anticipation, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

<u>Id.</u> at 528–29 (citations omitted).

In order to determine whether the exercise of jurisdiction comports with

due process, the Court examines five factors:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

<u>Stanton v. St. Jude Med., Inc.</u>, 340 F.3d 690, 694 (8th Cir. 2003) (citation omitted).

The first three factors are primary, while the last two factors are secondary. <u>Id.</u>

### 2. Venue Discussion

Under ERISA, venue is proper in any state in which a defendant may be found, and a defendant may be found in any state that has personal jurisdiction over that defendant. Here, Minnesota has personal jurisdiction over Bogen. The monetary payments at issue were sent to Minnesota, at Bogen's request, while she resided in Minnesota from 1989 to at least 2016, and she deposited the checks in a Minnesota bank account. Also, while Bogen now claims to no longer live in Minnesota, she does not dispute that she did live here for a substantial period of time and still owns her residence in Minnesota. Thus, personal jurisdiction over Bogen is proper, and, by extension, venue in Minnesota is proper.

### C. Res Judicata and Collateral Estoppel

### 1. Rule 12(b)(6) Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true. Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Thus, although a complaint need not include

> detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

In deciding a motion to dismiss, the Court considers the complaint and "materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings.  For example, courts may consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015) (citations omitted).

## 2.    Res Judicata and Collateral Estoppel Standards

"The law of the forum that rendered the first judgment controls the res judicata analysis." Schaefer v. Putnam, 827 F.3d 766, 769 (8th Cir. 2016) (citation omitted).  Thus, New Jersey law governs the preclusive effect of a prior New Jersey state court judgment.

> The doctrine of claim preclusion, or res judicata, prohibits a plaintiff from re-litigating the same claim against the same parties, provided the claims have previously been fairly litigated and determined.  Res judicata only serves to bar a claim when:
>
> (1) the judgment in the prior action must be valid, final, and on the merits;

(2) the parties in the later action must be identical to or in privity
with those in the prior action; and

(3) the claim in the later action must grow out of the same
transaction or occurrence as the claim in the earlier one.

Acosta v. A.C.E. Restaurant Group, Inc., No. CV 15-7149, 2017 WL 2539387, at *5

(D.N.J. June 12, 2017) (citations omitted).

The doctrine of issue preclusion, or collateral estoppel, is a
branch of the broader law of res judicata that bars re-litigation of any
issue actually determined in a prior action between the same parties
involving a different claim or cause of action. The doctrine of
collateral estoppel will bar subsequent re-litigation of an issue only
when:

(1) the issue to be precluded is identical to the issue decided in the
prior proceeding; (2) the issue was actually litigated in the prior
proceeding; (3) the court in the prior proceeding issued a final
judgment on the merits; (4) the determination of the issue was
essential to the prior judgment; and (5) the party against whom the
doctrine is asserted was a party to or in privity with a party to the
earlier proceeding.

Acosta, 2017 WL 2539387, at *6 (citations omitted).

### 3.    The New Jersey's Court's Jurisdiction

Schwartz claims that res judicata cannot apply because the New Jersey

court was without jurisdiction to determine whether Bogen was entitled to a

portion of his pension. Schwartz asserts that only federal courts may determine

16

whether an order is a QDRO.  A QDRO is a domestic relations order "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan."  29 U.S.C. § 1056(d)(3)(B)(i)(I). "ERISA recognizes QDROs as an exception to the general rule that pension plan benefits may not be assigned or alienated."  Alberici Corp. v. Davis, No. 4:04 CV 545 CEJ, 2005 WL 3307299, at *2 (E.D. Mo. Dec. 6, 2005), aff'd, 186 F. App'x 690 (8th Cir. 2006).

The Court holds that the New Jersey state court did have jurisdiction to determine whether the Final Judgment of Divorce constituted a QDRO and to enter the January 2017 order.  Case law overwhelmingly holds that state and federal courts have concurrent jurisdiction to make a QDRO determination.  See, e.g., Mack v. Kuckenmeister, 619 F.3d 1010, 1019 (9th Cir. 2010) (holding state and federal courts have concurrent jurisdiction to determine if a domestic relations order is a QDRO); Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 67 (1st Cir. 2008) (holding that state courts have concurrent jurisdiction to determine if a domestic relations order is a QDRO and noting "the one-sidedness of the caselaw" on this point).  See also Langston v. Wilson McShane Corp., 776 N.W.2d

684, 693 (Minn. 2009) (holding "that state and federal courts have concurrent jurisdiction to review a plan administrator's determination of whether a domestic relations order is 'qualified' for purposes of ERISA").

Here, as implicitly determined by the New Jersey court, Bogen was a "beneficiary" seeking "to recover benefits due to h[er] under the terms of h[er] plan, to enforce h[er] rights under the terms of the plan, or to clarify h[er] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Moreover, Schwartz also brought a motion before the New Jersey court seeking to obtain repayment of the pension payments and a determination that he owed no future payments; thus, he was seeking to enforce his rights under the Pension Plan and to clarify his rights to future benefits under the terms of the Pension Plan. The New Jersey court had jurisdiction to determine these issues, and it did so by holding that the Final Judgment of Divorce entitled Bogen to an ongoing equitable distribution of the Pension Plan and that ERISA's anti-assignment provision did not bar that distribution. Whether or not the New Jersey court correctly determined that the prior order was an enforceable QDRO is not relevant to the application of res judicata.

### 4.    Res Judicata Factors

The Court holds that res judicata applies and this Complaint must be dismissed.  First, the New Jersey state court's judgment is valid, final, and on the merits.  Schwartz does not dispute that he failed to appeal the judgment.  Nor does he dispute that the New Jersey court squarely determined that Bogen was, and continues to be, entitled to a portion of his pension.  The New Jersey court further heard and rejected Schwartz's argument that the Final Judgment of Divorce was not a QDRO.  Second, the parties to the New Jersey action and this action are identical: Schwartz and Bogen.  Third, the claims in the federal case grew out of the same transaction or occurrence as the claims in the New Jersey case: namely, Schwartz's demand for repayment of the pension-sharing payments and assertion that he is not required to continue payments going forward.  The issues of whether the Final Judgment of Divorce entitled Bogen to an equitable distribution of the Pension Plan and whether ERISA barred such equitable distribution were explicitly argued to the New Jersey court and decided by the New Jersey court.  Deciding these issues was essential to the New Jersey court's judgment.  Thus, res judicata applies.  See Geiger, 521 F.3d at 68 (affirming district court's dismissal on res judicata grounds because "Geiger rejected the opportunity to challenge the QDROs at both the state trial and

appellate levels.  That he did so on the mistaken belief that the federal courts had

exclusive jurisdiction over those challenges does not alter the finality of those

judgments, nor their preclusive effect.").

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

1.    Defendant's Motion to Dismiss [Docket No. 8] is **GRANTED**.

2.    This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:   November 28, 2017          s/ Michael J. Davis
                                    Michael J. Davis
                                    United States District Court